UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MARY J. HALL,

Plaintiff,

v. CASE NO. 3:15-cv-941-J-MCR

CAROLYN W. COLVIN, Commissioner of the Social Security Administration,

Defendant.
_________________________________/

**ORDER**

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her application for a period of disability and disability insurance benefits. Plaintiff alleges she became disabled on August 31, 2011. Plaintiff's application was denied initially and on reconsideration. A hearing was held before the assigned Administrative Law Judge ("ALJ") on November 21, 2013, at which Plaintiff was represented by an attorney. (Tr. 41-70.) The ALJ found Plaintiff not disabled since August 31, 2011, the alleged onset date, through December 18, 2013, the date of the decision. (Tr. 22-33.)

Plaintiff is appealing the Commissioner's decision that she was not disabled during the relevant time period. Plaintiff has exhausted her available administrative remedies and the case is properly before the Court. The undersigned has reviewed the record, the briefs, and the applicable law. For the

reasons stated herein, the undersigned determines that the Commissioner's decision is due to be **AFFIRMED**.

## I. Standard of Review

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II. Discussion

Plaintiff argues the following three general points on appeal: (a) that the ALJ's residual functional capacity ("RFC") determination is not supported by substantial evidence; (b) that the ALJ failed to pose a proper hypothetical question to the vocational expert ("VE"); and (c) that the ALJ's credibility determination is not supported by substantial evidence. (Doc. 25 at 2-3.) Specifically, Plaintiff contends that the ALJ erred in failing to include manipulative limitations in the RFC determination despite affording great weight to the opinions of examining physician Timothy McCormick, D.O., MPH. Plaintiff also argues that because the ALJ failed to include Plaintiff's manipulative limitations in the RFC determination, the ALJ erred in failing to include such limitations in the hypothetical question posed to the VE. Finally, Plaintiff asserts that the ALJ failed to articulate specific reasons for discounting Plaintiff's credibility, which are supported by substantial evidence. (Doc. 25.)

Defendant responds that the ALJ sufficiently accounted for Plaintiff's limitations in the RFC determination. Further, Defendant contends that the ALJ's reliance on the VE's testimony and the ALJ's credibility determination was proper. Defendant asserts that the ALJ properly concluded that Plaintiff is not disabled and that substantial evidence confirms the ALJ's conclusion. (Doc. 26.)

### A. The ALJ's Decision

The ALJ determined that Plaintiff had severe impairments, including

bladder prolapse, disorders of the spine, degenerative disc disease, anxiety, affective disorder, headaches, and chronic obstructive pulmonary disease. (Tr. 24.) The ALJ then determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 24-26.)

Continuing on with the evaluation, the ALJ made the following RFC determination:

> the undersigned finds that the claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except that the claimant needs to avoid ladders or unprotected heights; the operation of heavy moving machinery; and concentrated dust, fumes, or gases. The claimant needs a low stress work environment with no production line. The claimant can occasionally bend, crouch, kneel, and stoop. The claimant needs to avoid squatting and crawling; the push pull of arm controls; and the operation of foot controls. The claimant needs a sit-stand option (i.e., to be able to either sit or stand at her option).

(Tr. 26.) In making this finding, the ALJ assigned great weight to consulting physician Dr. McCormick who opined that Plaintiff "is probably functioning in more of a lighter activity level based on the health problems as described," as such opinion "is consistent with the medical evidence of record, including the doctor's own findings." (Tr. 28.) Moreover, the ALJ afforded great weight to the opinions of state agency medical consultant Charles Moore, M.D. "to the extent [the opinions are] consistent with the assessed [RFC]." (Tr. 31.) However, the ALJ rejected Dr. Moore's opinions to the extent that they contain greater or additional

restrictions than the assessed RFC because they "are not consistent with the medical evidence of record or supported by the record as a whole." (*Id.*) The ALJ presented the following discussion with respect to Dr. Moore's proposed manipulative limitations:

> For example, the undersigned finds that the claimant has no limitation with overhead reaching, handling, or fingering. On April 2012, the claimant had good grip strength bilaterally and normal dexterity. The claimant had reduced range of motion in the right shoulder; however, she had full strength in the upper extremities (Exhibit 16F). Thereafter, in July 2013, the claimant had no restriction in range of motion of the extremities. Strength was normal and motor function was intact (Exhibit 25F/2). In August 2013, the claimant denied back pain, joint pain, and joint swelling. She moved all extremities well (Exhibit 23F/6). On examination in September 2013, the claimant had good muscle tone and strength with no swelling, tenderness, or limitation of motion of any joint. The neurologic exam was within normal limits with no motor deficits and normal sensation (Exhibit 23F/2).

(*Id.*)

The ALJ also found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible for the reasons explained in the decision. (Tr. 28.) Later in the decision, the ALJ explained that "the record does not support a resulting inability to work." (Tr. 30.) The ALJ referenced medical records contradicting Plaintiff's ability to work. (*Id.*) Moreover, the ALJ noted Plaintiff's conservative medical treatment and her receipt of unemployment

compensation in 2011 and 2012. (*Id*.)

With the benefit of testimony from VE Donna Mancini, the ALJ determined that there are other jobs existing in significant numbers in the national economy that Plaintiff can perform based on her age, education, work experience, and RFC, such as cashier, ticket seller, and ticket taker. (Tr. 32-33.) As such, the ALJ found that Plaintiff was not disabled. (Tr. 33.)

**B. The ALJ's RFC Determination Was Proper**

The ALJ determined that Plaintiff could perform light work with certain restrictions. (Tr. 26.) The ALJ did not include in the RFC manipulative limitations, such as limitations with overhead reaching, handling, and/or fingering. Plaintiff argues that the ALJ's failure to include such limitations in the RFC determination was improper for two reasons. First, Plaintiff contends that the ALJ erred in affording great weight to the opinions of Dr. McCormick without including manipulative limitations. Second, Plaintiff argues that the ALJ erred in not accepting the manipulative limitations set forth by state agency medical consultant Dr. Moore. The undersigned disagrees with both of Plaintiff's contentions.

Contrary to Plaintiff's assertion, Dr. McCormick did not opine that Plaintiff had manipulative limitations, or otherwise opine that Plaintiff had greater restrictions than those found by the ALJ. Upon examination of Plaintiff on April 16, 2012, Dr. McCormick opined that despite Plaintiff's symptoms of arthritis, she

has “normal dexterity” and that “she has good grip [strength] bilaterally.” (Tr. 28, 493.) Dr. McCormick noted that Plaintiff also had full range of motion, except for her right shoulder, and had full strength and intact sensation in her upper extremities. (*Id.*) Dr. McCormick opined that Plaintiff’s primary problems are neck-related complaints and that she is “probably functioning in more of a lighter activity level,” despite her symptoms. (Tr. 494.)

As support for her argument that Dr. McCormick included manipulative limitations that the ALJ ignored, Plaintiff points to Dr. McCormick’s evaluation report where he referenced Plaintiff’s swelling consistent with an arthritic process in certain finger joints, Plaintiff’s report of tenderness in those joints, her complaint of discomfort at the wrist during Tinel’s testing, and her report of right middle finger problems and stenosing tenosynovitis in the right middle finger. (Tr. 493-94.) However, the mere presence of these impairments does not undermine the ALJ’s RFC determination. *See Moore v. Barnhart*, 405 F.3d 1208, 1213, n.6 (11th Cir. 2005) (“[T]he mere existence of these impairments does not reveal the extent to which they limit [his] ability to work or undermine the ALJ’s [RFC] determination in that regard.”). Moreover, Plaintiff argues that Dr. McCormick’s references to Plaintiff’s arthritis symptoms are consistent with x-rays taken in June of 2013 and, therefore, manipulative limitations should have been included in Plaintiff’s RFC determination. However, Plaintiff’s argument in this regard does nothing more than invite the Court to improperly re-weigh evidence and invade

the province of the ALJ, who has the ultimate duty to make the RFC determination based on the evidence presented.  *See, e.g., Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) ("Even if the evidence preponderates against the Secretary's factual findings, we must affirm if the decision reached is supported by substantial evidence.") (citations omitted); *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986) ("The weighing of evidence is a function of the [ALJ], not of the district court."); *Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir. 1984) (stating that when there is conflicting evidence on an issue, "it is the Secretary, acting through the ALJ, and not the court, who is charged with the duty to weigh the evidence and to determine the case accordingly") (citing *Richardson v. Perales*, 402 U.S. 389, 389-403 (1971)).

Nevertheless, the ALJ considered whether to include manipulative limitations in his discussion of Dr. Moore's opinions, but rejected such limitations as "not consistent with the medical evidence of record or supported by the record as a whole."  (Tr. 31.)  As an initial matter, it is important to note that although Dr. Moore did include manipulative limitations in his evaluation, the ALJ is not required to "match" the opinions of a medical source in the ALJ's RFC determination.  *See* 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a)(3), 404.1546(c); *see also Kopke v. Astrue*, Case No.: 8:11-cv-1197-T-30TGW, 2012 WL 4903470 at *5 (M.D. Fla. Sept. 26, 2012) ("If the plaintiff is arguing that the [ALJ's] determination of the plaintiff's [RFC] must 'match' the opinions of a medical

source, that contention is unpersuasive, as the responsibility for assessing the plaintiff's [RFC] rests with the [ALJ]."), report and recommendation adopted in 2012 WL 4867423*.* The ALJ considered Dr. Moore's manipulative limitations, rejected them, and articulated reasons supported by substantial evidence for doing so.

The ALJ referenced Dr. McCormick's April 2012 examination revealing that Plaintiff had good grip strength bilaterally, normal dexterity, and full strength in the upper extremities. (Tr. 31, 493, 496.) The ALJ also noted that Plaintiff's strength was normal, her motor function was intact, and she had no restriction in range of motion of the extremities in July 2013. (Tr. 730.) In August 2013, Plaintiff denied back pain, joint pain, and joint swelling, and moved all extremities well. (Tr. 631.) In September 2013, Plaintiff showed good muscle tone and strength, with no swelling, tenderness, or limitation of any joint. (Tr. 627.) Plaintiff's digits showed no cyanosis or clubbing. (*Id*.) Plaintiff's neurologic exam was within normal limits, showing normal reflexes and sensation with no motor deficits. (*Id*.)

Plaintiff contends that the evidence referenced by the ALJ in rejecting Dr. Moore's proposed limitations does not constitute substantial evidence because the ALJ referenced: (1) the examination of Dr. McCormick without referencing the negative symptoms described by Dr. McCormick, (2) a July 2013 examination of Plaintiff unrelated to her hand problems, and (3) two examinations that "appear to be a review of systems with nothing to do with the actual physical examination of

[Plaintiff].” (Doc. 25 at 13-14.) The undersigned disagrees. Again, the ALJ properly evaluated the opinions of Dr. McCormick so there was no error by the ALJ in referencing his opinions. Further, Plaintiff failed to provide the Court with any persuasive support for precluding the ALJ from considering and referencing the July, August, and September 2013 medical reports. *Cf. Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004) (“In determining whether Phillips can return to her past relevant work, the ALJ must determine the claimant’s RFC using all relevant medical and other evidence in the case.”) (citation omitted); 20 C.F.R. § 404.1529 (allowing an ALJ to consider a claimant’s statements about her symptoms when assessing RFC). The ALJ here weighed the evidence and determined Plaintiff’s RFC, which is supported by substantial evidence. The Court will not undertake the task of re-weighing the evidence on appeal.

Finally, Plaintiff’s argument that the ALJ failed to weigh the opinions of Plaintiff’s “treating facilities” is unpersuasive. While the ALJ must address medical opinions explicitly, the ALJ is not required to address every piece of evidence in the record. *See, Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (stating that “there is no rigid requirement that the ALJ specifically refer to every piece of evidence in the record”); *see also Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) (noting that the ALJ should sufficiently explain the weight given to “obviously probative” evidence). Notably, Plaintiff does not cite to any “obviously probative” opinions that the ALJ failed to consider, but rather

vaguely asserts that the ALJ failed to assign weight to the treating physicians. It is clear that the ALJ in this case considered and assigned weight to the probative opinion evidence. (Tr. 30-31.) As discussed above, the ALJ's RFC determination is supported by substantial evidence.

**C. The ALJ's Determination at Step Five Was Proper**

Plaintiff next argues that the determination at step five was not supported by substantial evidence. Namely, Plaintiff asserts that this determination was improper because of the ALJ's failure to include manipulative limitations in the RFC determination. However, as already discussed above, the undersigned finds that the ALJ did not err in making the RFC determination. In the hypothetical to the VE, the ALJ included all limitations made in his RFC determination. (Tr. 63-65.) From that hypothetical, the VE recited three occupations that Plaintiff could perform. (Tr. 64-65.) The ALJ was not required to incorporate unsupported allegations or unsupported opinions within his hypothetical to the VE. *See, e.g., Crawford*, 363 F.3d at 1161; *Graham v. Bowen*, 790 F.2d 1572,1576 (11th Cir. 1986).

**D. The ALJ Properly Discredited Plaintiff's Testimony**

The ALJ must consider all of a claimant's statements about his or her symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In doing so, the ALJ must apply the Eleventh Circuit's three-

part standard which requires: (1) evidence of an underlying physical or mental condition and either (2) objective medical evidence that confirms the severity of the alleged symptoms arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged symptoms. *Foote*, 67 F.3d at 1559 (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).

Plaintiff contends that the ALJ erred in discounting Plaintiff's testimony. Specifically, Plaintiff argues that the ALJ failed to articulate reasons for discounting the testimony, but rather recited "boiler plate type language" for discounting her testimony. (Doc. 25 at 21.) Plaintiff points to the following statement by the ALJ:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for reasons explained in this decision.

(Tr. 28.) The undersigned agrees with Plaintiff that this statement constitutes the boiler plate type language that, without more, may not withstand scrutiny on appeal. However, the ALJ did not end his analysis with that statement alone. Rather, the ALJ articulated specific reasons for discounting Plaintiff's credibility. (Tr. 30.) The ALJ noted that the objective evidence did not support Plaintiff's allegations. (*Id*. ("Turning to the credibility analysis, although the record confirms

the existence of the claimant's impairment, the record does not support a resulting inability to work.").) The ALJ referenced normal evaluations of Plaintiff's extremities and lungs, Plaintiff's denial of back and joint pain and joint swelling, and Plaintiff's full range of motion in her neck, which is supported by the record. (*Id*.; Tr. 618 (noting Plaintiff's lungs were clear to auscultation, extremities were within normal limits "with no clubbing, cyanosis, or edema. Gait and station normal."); Tr. 627 ("Normal gait and station, spine without deformity, good muscle tone and strength, no swelling, tenderness, or limitation of motion of any joint . . . no motor deficits."); Tr. 631 ("Denies back pain, joint pain, joint swelling . . . Moves all extremities well, no clubbing or edema."); Tr. 705 ("Negative for back pain."); Tr. 729 ("Denies low back pain, joint pain."); Tr. 730 ("RESPIRATORY: clear to auscultation, bilaterally . . . the upper and lower extremities have normal muscle, joint, and bone structure. No tenderness, effusion or edema is noted. No restriction in range of motion is noted. Strength is normal and symmetrical for the upper and lower extremities . . . normal gait is noted. Patient ambulates without assistance. There is normal muscle tone. Motor function is intact.").)

Further, the ALJ referenced Plaintiff's conservative treatment. The ALJ noted that Plaintiff has not received treatment from a mental health professional. (Tr. 30.) Plaintiff also testified that she was not receiving treatment for her alleged pain. (Tr. 30, 52-53.) Finally, the ALJ noted that Plaintiff received unemployment benefits after her alleged onset date of August 31, 2011 through

the end of 2012, although there was a question as to whether Plaintiff's unemployment benefits were due to a medical impairment as opposed to inability to secure work. (Tr. 44-46, 184.) Contrary to Plaintiff's contention, the ALJ articulated reasons for discrediting Plaintiff's testimony and those reasons are supported by substantial evidence.

## III. Conclusion

The Court does not make independent factual determinations, re-weigh the evidence, or substitute its decision for that of the ALJ. Thus, the question is not whether the Court would have arrived at the same decision on *de novo* review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. Based on this standard of review, the undersigned affirms the ALJ's decision that Plaintiff was not disabled within the meaning of the Social Security Act for the time period in question.

Accordingly, it is **ORDERED** that:

1. The Commissioner's decision is **AFFIRMED**.

2. The Clerk of Court be directed to enter judgment accordingly and close the file.

**DONE AND ENTERED** at Jacksonville, Florida, on November 14, 2016.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record